Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/22/2025 09:13 AM CDT

- 663 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

STATE OF NEBRASKA EX REL. DOUGLAS COUNTY SCHOOL
DISTRICT NO. 66, ALSO KNOWN AS WESTSIDE COMMUNITY
SCHOOL DISTRICT, APPELLANT, V. JOHN EWING, IN HIS
OFFICIAL CAPACITY AS COUNTY TREASURER OF DOUGLAS
COUNTY, NEBRASKA, APPELLEE, AND DOUGLAS COUNTY
SCHOOL DISTRICT NO. 0001, ALSO KNOWN AS
OMAHA PUBLIC SCHOOLS, INTERVENOR-APPELLEE.

___ N.W.3d ___

Filed August 22, 2025.    No. S-24-192.

1. **Motions to Vacate: Time: Appeal and Error.** The decision to vacate an order any time during the term in which the judgment is rendered is within the discretion of the court; such a decision will be reversed only if it is shown that the district court abused its discretion.

2. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

3. **Constitutional Law: Courts.** The construction of the Nebraska Constitution is a judicial function, and the Nebraska Constitution is interpreted as a matter of law.

4. **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.

5. **Contracts: Appeal and Error.** The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below.

6. **Mandamus: Words and Phrases.** Mandamus is a law action and represents an extraordinary remedy, not a writ of right.

7. **Mandamus.** Whether to grant a writ of mandamus is within a court's discretion.

8. **Mandamus: Proof.** Mandamus relief is available if the movant can show (1) a clear right to the relief sought, (2) a corresponding clear

- 664 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

duty to perform the act requested, and (3) no other plain and adequate remedy is available in the ordinary course of law.

9. ____: ____. In a mandamus action, the party seeking mandamus has the burden of proof and must show clearly and conclusively that such party is entitled to the particular thing the relator asks and that the respondent is legally obligated to act.

10. **Mandamus: Public Officers and Employees.** Mandamus is available to enforce the performance of ministerial duties of a public official but is not available if the duties are quasi-judicial or discretionary.

11. ____: ____. A duty imposed by law which may be enforced by writ of mandamus must be one which the law specifically enjoins as a duty resulting from an office, trust, or station.

12. **Mandamus.** The general rule is that an act or duty is ministerial only if there is an absolute duty to perform in a specified manner upon the existence of certain facts.

13. ____. A duty or act is ministerial when there is no room for the exercise of discretion, official or otherwise, the performance being required by direct and positive command of the law.

14. **Public Officers and Employees.** A ministerial duty is not dependent upon a public officer's judgment or discretion—it is performed under the conditions specified in obedience to the mandate of legal authority, without regard for the exercise of the officer's judgment upon the propriety of the act being done.

Appeal from the District Court for Douglas County: Katie L. Benson, Judge. Affirmed in part, and in part reversed and remanded with direction.

Michael F. Coyle, Michael B. Duffy, and Sarah L. McGill, of Fraser Stryker, P.C., L.L.O., for appellant.

Donald W. Kleine, Douglas County Attorney, Dana N. Livingston, and Jimmie L. Pinkham III, for appellee.

Megan S. Wright, Trenten P. Bausch, and Kimberly A. Duggan, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for intervenor-appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, and Freudenberg, JJ.

- 665 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

Funke, C.J.

## I. INTRODUCTION

Under the Nebraska Constitution and subsequently enacted statutes, payments in lieu of taxes (PILOT funds) are to be distributed by county treasurers to eligible entities in accordance with a specified formula. This case raises the question of whether an eligible entity may obtain a writ of mandamus directing a county treasurer to properly distribute PILOT funds. For the reasons set forth below, we conclude that the relevant constitutional and statutory provisions create such a ministerial duty. Because all other prerequisites for a writ of mandamus are met, we further conclude that the district court, although properly vacating the first writ of mandamus, erred in denying the renewed motion for a writ and, therefore, abused its discretion in dismissing the case with prejudice. As such, we affirm in part, and in part reverse and remand with direction for the district court to enter an alternative writ of mandamus directing the treasurer to show cause why a peremptory writ should not be issued requiring the treasurer to pay the eligible entity the amounts it was entitled to receive by law.

## II. BACKGROUND

### 1. Westside Underpaid

Under article VIII, § 11, of the Nebraska Constitution, and subsequently enacted Neb. Rev. Stat. §§ 70-651.01 through 70-651.05 (Reissue 2018), Douglas County School District No. 66, also known as Westside Community School District (Westside), was entitled to receive PILOT fund distributions from John Ewing, in his official capacity as the county treasurer of Douglas County, Nebraska (treasurer).

In May 2022, however, Nebraska's Auditor of Public Accounts issued a report showing that in 2021, the treasurer erroneously distributed the PILOT funds in such a manner that certain entities were overpaid, and certain entities were underpaid. Specific to this case, the report indicated that Westside had been underpaid by millions of dollars, while

- 666 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

Douglas County School District No. 0001, also known as Omaha Public Schools (OPS); Douglas County; and the city of Omaha were overpaid by similarly large amounts. Although our record reflects differing amounts for the payment errors at issue, the precise amounts are immaterial to the issues before us. The report also stated it was likely that such errors had occurred in previous years, although there was no further discussion on this point. The auditor "recommend[ed] the [treasurer] correct the erroneous distributions."

None of the parties dispute that Westside was underpaid, that other entities were overpaid, and that the underpayments and overpayments constituted error on the part of the treasurer.

In light of the underpayment, Westside filed suit against the treasurer, seeking an alternative and peremptory writ of mandamus directing the treasurer to correct the errors.

## 2. Settlement Agreement

After the litigation began, Westside, the treasurer (reflected in the agreement as "Douglas County"), and the city of Omaha were parties to a settlement agreement intending to rectify underpayments and overpayments from 2019, 2020, and 2021. OPS declined to participate in the settlement agreement.

The settlement agreement provided that "Douglas County" and the city of Omaha would make six equal payments to Westside over the span of 6 years, starting in 2024 and ending in 2029, totaling the amount they had been overpaid. To make those payments, "Douglas County" and the city of Omaha agreed to forward, or to have the treasurer forward, a portion of their PILOT funds in each of those years to Westside. In other words, the agreed-upon relief involved the use of prospective PILOT fund distributions.

The parties to the settlement also agreed that Westside and "Douglas County" would jointly file a stipulated motion for a peremptory writ of mandamus ordering the treasurer to forward future distributions to Westside "pursuant to the timing set

- 667 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

forth" in the agreement. However, the agreement further provided that if the stipulated motion is "denied for any reason," Westside would dismiss the petition for mandamus against "Douglas County" with prejudice.

### 3. DISTRICT COURT PROCEEDINGS

#### (a) Joint Motion

Per the settlement agreement, the treasurer and Westside filed a joint motion seeking a peremptory writ of mandamus. The motion reflected the agreement of the parties to the settlement that, based on article VIII, § 11, and §§ 70-651.01 through 70-651.05, the treasurer had a ministerial duty to properly distribute the PILOT funds and, by implication, to remedy any errors that might have occurred during that process.

The motion requested that the writ direct the treasurer to correct the underpayments by using the 6-year prospective repayment structure outlined in the settlement agreement. The motion also requested that the court order the treasurer to reduce the future amount of OPS' distributions as well, so that Westside would be fully repaid by all overpaid entities and not merely by those who were a party to the settlement agreement.

#### (b) Initial Writ

The court initially issued the writ of mandamus in accordance with the joint motion. The ordered writ utilized the language from the settlement agreement and the joint motion to specify how the repayments were to occur.

A copy of the writ was subsequently sent to OPS.

#### (c) OPS Seeks to Intervene

Upon receipt of the writ, OPS filed a motion to intervene in the litigation and to vacate or quash the writ. OPS argued that because the litigation would impact its future distributions of PILOT funds, it was an indispensable party and, therefore, equity required it be permitted to intervene. OPS also argued

- 668 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

that the issuance of the writ was improper because § 70-651.04 did not expressly permit relief in any manner, and certainly not in the manner described in the writ. Specifically, OPS argued that because the writ required the treasurer to divert funds from overpaid entities to underpaid entities, the treasurer would still, effectively, be violating § 70-651.04 because the distributions would be based on a formula other than that provided by the Nebraska Constitution and statutes.

Both Westside and the treasurer opposed OPS' motion to intervene. At a subsequent hearing on the intervention, the treasurer explained that the writ was necessary precisely because there was a question of whether the treasurer, absent a court order, had the authority to correct the erroneous distributions by redistributing future PILOT funds. The treasurer was concerned that such redistribution may, in fact, violate § 70-651.04, thereby constituting official misconduct.

(d) District Court's Order

After a hearing on the matter, the district court vacated the writ. The court concluded that "a writ of mandamus is likely an appropriate remedy to compel [the treasurer] to pay Westside . . . if [the treasurer] was unwilling to do so. However, the parties have not pointed to any statutory duty that requires correction of the underpayment in the precise manner outlined." (Emphasis omitted.)

The district court found that it did not need to determine whether OPS could intervene, since the basis for OPS' intervention had been the existence of the writ, which was being vacated.

The court did not dismiss the action, so it remained pending as though the writ had never been entered.

(e) Subsequent Motions and Dismissal

Westside renewed its motion for a peremptory writ, this time requesting only that the court require the treasurer to remedy the underpayment without specifying the form of such

- 669 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

remedy. Westside maintained that the settlement's dismissal provision did not preclude such a writ because the court's decision to vacate the writ was not the same as a denial of that writ.

In response, the treasurer filed a motion to enforce the settlement agreement. In that motion, the treasurer asserted that the court's order vacating the writ was akin to a denial of the joint stipulated motion and that the case should, therefore, be dismissed under the settlement agreement.

The court denied Westside's motion, reasoning that the language of § 70-651.04 did not permit it to provide the requested relief. Instead, the court granted the treasurer's motion to enforce the settlement agreement, finding that all elements of a valid contract had been met, and that no party made any arguments of unenforceability. In fact, both Westside and the treasurer had confirmed the ongoing validity of the settlement agreement. As such, after reviewing the settlement agreement's dismissal provision, the court enforced the agreement and dismissed the case with prejudice.

Westside appealed, and we moved the matter to our docket.[1]

On appeal, OPS again requested to intervene, and we granted that motion.

## III. ASSIGNMENTS OF ERROR

Westside assigns that the district court erred in (1) vacating the initial peremptory writ of mandamus, (2) denying the renewed motion for such a writ, and (3) dismissing the case with prejudice.

## IV. STANDARD OF REVIEW

[1] The decision to vacate an order any time during the term in which the judgment is rendered is within the discretion of the court; such a decision will be reversed only if it is shown that the district court abused its discretion.[2]

---

[1] Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

[2] *Schaaf v. Schaaf*, 312 Neb. 1, 978 N.W.2d 1 (2022).

- 670 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

[2] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[3]

[3] The construction of the Nebraska Constitution is a judicial function, and the Nebraska Constitution is interpreted as a matter of law.[4]

[4] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.[5]

[5] The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below.[6]

## V. ANALYSIS

Westside's primary arguments on appeal concern the district court's decision to vacate the first writ of mandamus and its subsequent decision to deny the renewed motion for a writ. As such, we first review the principles governing our case law on writs of mandamus.

### 1. Foundational Principles

[6-9] We have stated that mandamus is a law action and represents an extraordinary remedy, not a writ of right.[7] Whether to grant a writ of mandamus is within a court's discretion.[8] Mandamus relief is available if the movant can show (1) a clear right to the relief sought, (2) a corresponding clear duty to perform the act requested, and (3) no other plain and

---

[3] *State v. Dat*, 318 Neb. 311, 15 N.W.3d 410 (2025).

[4] *City of Omaha v. City of Elkhorn*, 276 Neb. 70, 752 N.W.2d 137 (2008).

[5] *Aguilar v. Valdez-Mendoza*, 318 Neb. 402, 16 N.W.3d 130 (2025).

[6] *Valley Boys v. American Family Ins. Co.*, 306 Neb. 928, 947 N.W.2d 856 (2020).

[7] *State ex rel. Wagner v. Evnen*, 307 Neb. 142, 948 N.W.2d 244 (2020).

[8] *Id*.

- 671 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

adequate remedy is available in the ordinary course of law.[9] In a mandamus action, the party seeking mandamus has the burden of proof and must show clearly and conclusively that such party is entitled to the particular thing the relator asks and that the respondent is legally obligated to act.[10]

[10-14] We have before explained that mandamus is available to enforce the performance of ministerial duties of a public official but is not available if the duties are quasi-judicial or discretionary.[11] A duty imposed by law which may be enforced by writ of mandamus must be one which the law specifically enjoins as a duty resulting from an office, trust, or station.[12] The general rule is that an act or duty is ministerial only if there is an absolute duty to perform in a specified manner upon the existence of certain facts.[13] A duty or act is ministerial when there is no room for the exercise of discretion, official or otherwise, the performance being required by direct and positive command of the law.[14] A ministerial duty is not dependent upon a public officer's judgment or discretion—it is performed under the conditions specified in obedience to the mandate of legal authority, without regard for the exercise of the officer's judgment upon the propriety of the act being done.[15]

## 2. District Court Did Not Err in Vacating First Writ of Mandamus

With those principles in mind, we address Westside's first assignment of error. As noted above, there is no dispute that

---

[9] *Id.*

[10] *State ex rel. Parks v. Council of City of Omaha*, 277 Neb. 919, 766 N.W.2d 134 (2009).

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

- 672 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

Westside was underpaid PILOT funds. The parties do, however, dispute whether the treasurer has a duty to distribute the PILOT funds properly and, by implication, a duty to correct any mistaken distributions.

Both Westside and the treasurer maintain that article VIII, § 11, and §§ 70-651.01 through 70-651.05 impose a clear duty on the treasurer to distribute the PILOT funds. From this duty, they reason that the treasurer must also have a corresponding, implicit duty both to provide each eligible entity with the correct amount of PILOT funds and to remedy any errors made in calculating and distributing the funds. OPS counters that because neither the constitutional nor the statutory language explicitly mentions the correction of errors, there can be no nondiscretionary duty for the treasurer to do so. To the extent Westside seeks proper distribution to itself, we agree with Westside and the treasurer.

Article VIII, § 11, was adopted by referendum in 1958, and it permits the Legislature to collect PILOT funds from political subdivisions and public corporations providing electricity and irrigation. The constitutional provision then requires those funds to be distributed by county treasurers to eligible entities, including school districts. As to the distribution process, article VIII, § 11, states, in relevant part:

> So much of such five (5) per cent as is in excess of an amount equivalent to the amount paid by such public corporation in lieu of taxes in 1957 shall be distributed in each year to . . . the school districts located in such city or village . . . in the proportion that their respective property tax mill levies in each such year bear to the total of such mill levies.

In 1959, the Legislature acted on this constitutional permission by passing §§ 70-651.01 through 70-651.05. The parties focus their attention on § 70-651.04, which, utilizing language nearly identical to that in article VIII, § 11, states, in relevant part:

- 673 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

All payments which are based on retail revenue from each incorporated city or village shall be divided and distributed by the county treasurer . . . to the school districts located in that city or village . . . in the proportion that their respective property tax levies in the preceding year bore to the total of such levies, except that the only learning community levies to be included are the common levies . . . .

Based on the plain language of the provisions at issue, there is no question that there is a duty imposed on the treasurer to distribute the PILOT funds to the school districts.[16] Both provisions plainly and clearly require that the treasurer collect PILOT funds and distribute the generated revenue to the school districts. From these provisions, it is also equally plain and clear that there is a duty to use a particular calculation in determining the proper amount of said distributions. Both provisions specify, in nearly identical terms, a precise formula to be followed in calculating the amount of the distributions for each school district. The formula provided is exact and detailed, leaving no room for discretion in the process; there is a correct way to distribute the PILOT funds, and that method is the one laid out in both article VIII, § 11, and § 70-651.04. This is the essence of a ministerial duty.

OPS attempts to argue that because the provisions do not explicitly detail how, in the case of erroneous distributions, corrections should be made, there can be no ministerial duty for the treasurer to give Westside its remaining PILOT funds. If we were to accept OPS' argument, we would have to conclude, despite the plain language of the provisions, that the treasurer's only duty is to distribute the funds generally, but

---

[16] See *Mullins v. Box Butte County*, 317 Neb. 937, 946, 13 N.W.3d 67, 73 (2024) (providing that "basic principles of statutory interpretation generally require [a court] to give statutory language its plain and ordinary meaning"). See, also, *Conroy v. Keith Cty. Bd. of Equal.*, 288 Neb. 196, 846 N.W.2d 634 (2014) (concluding that rules of statutory interpretation apply to interpretation of constitutional provisions as well).

- 674 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

that it does not matter whether such distribution is in the manner adopted by the people and drafted by the Legislature. In other words, OPS asks us to determine that Westside cannot compel the treasurer to comply with the formula provided and that, instead, Westside is resigned to whatever amount the treasurer may determine is an appropriate distribution. We reject this argument because it misses a key point: It cannot be the case that a duty has been fulfilled if it has not been properly completed.

In several previous opinions, we have addressed issues similar to those currently before us.[17] In both *State, ex rel. Sch. Dist., v. White*[18] and *Kas v. State*,[19] we were faced with a scenario in which treasurers of a village were required, by ordinance and statute, respectively, to pay local school districts a precise amount of moneys generated by the ordinance and statute in question. At issue was whether a writ of mandamus could lie to compel the treasurers to correct the improper distribution of those funds. In *White*, the treasurer simply refused to distribute any funds to one school, giving the funds instead to another school. In *Kas*, the treasurer incorrectly utilized the statutory formula, similarly resulting in one school being paid several hundred dollars of funds owed to another school. In both cases we concluded that a writ of mandamus was the appropriate remedy. Specifically, we concluded that the laws in question created a ministerial duty for the treasurers to distribute the funds in the precise manner provided. In both cases, we explained that the treasurers improperly distributed the funds at their peril. As we further explained, the fact that the treasurers had already distributed the funds to another

---

[17] See *State v. Wilcox*, 17 Neb. 219, 22 N.W. 458 (1885); *State v. Roderick*, 23 Neb. 505, 37 N.W. 77 (1888); *State, ex rel. Sch. Dist., v. White*, 29 Neb. 288, 45 N.W. 631 (1890); and *Kas v. State*, 63 Neb. 581, 88 N.W. 776 (1902).

[18] *White, supra* note 17.

[19] *Kas, supra* note 17.

- 675 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

school, or that the school had accepted the lesser amount of funds, was of no import because, as stated in *Kas*, "[t]here was no occasion . . . to make any mistake, and nothing done by [the schools] was a sufficient excuse for [the treasurers] so doing."[20] These conclusions and principles from *White* and *Kas* control our analysis in this case.

As can be seen from *White* and *Kas*, as well as from our case law in other contexts,[21] when a duty is imposed, there is an expectation that such duty will be performed properly. If that duty is not fulfilled in the manner provided by law, it constitutes a breach of that duty.

In this case, the ministerial duty is one imposed on the treasurer to distribute the PILOT funds based on the exact formula adopted by the people and required by the Legislature. In requiring that the treasurer distribute the PILOT funds in a specific manner, it must be that that the treasurer's duty is only accomplished when he or she has facilitated that exact and particular distribution. Because Westside was underpaid and other entities, including OPS, were overpaid, this means the treasurer has, by definition, failed to fulfill the ministerial duty created by article VIII, § 11, and § 70-651.04.

Nonetheless, we conclude that the district court did not abuse its discretion in vacating the first writ. As explained above, a writ of mandamus can only be issued to compel a public official to properly perform a specified and preexisting ministerial duty.

The ministerial duty in this case is for the treasurer to distribute the funds "to the school districts . . . in the proportion that their respective property tax levies in the preceding year

---

[20] *Id*. at 585, 88 N.W. at 777.

[21] See, *Breeden v. Anesthesia West*, 265 Neb. 356, 656 N.W.2d 913 (2003) (discussing proper performance in context of medical malpractice); *Sturgeon v. Crosby Mortuary*, 140 Neb. 82, 299 N.W. 378 (1941) (discussing proper performance of coroner's statutory duties); *John A. Creighton Home v. Waltman*, 140 Neb. 3, 299 N.W. 261 (1941) (proper performance in context of administration of trust).

- 676 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

bore to the total of such levies" and to take the necessary steps to ensure proper performance of that duty is achieved, if not done so in the first instance. The first writ issued by the court, however, went beyond this. It purported to dictate precisely when, where, how, and in what amounts the treasurer would issue reimbursements to Westside. Such a writ exceeded the bounds of the ministerial duty.

### 3. DISTRICT COURT IMPROPERLY DENIED WESTSIDE'S RENEWED MOTION

We turn to Westside's second assignment of error, which concerns the district court's denial of Westside's renewed motion for a peremptory writ based on the court's application of the settlement agreement. We conclude that the settlement agreement did not apply after the court vacated the initial writ; that Westside has no other plain and adequate remedies; and that, therefore, the renewed motion for a writ should have been granted.

### (a) Renewed Motion Not Foreclosed by Settlement Agreement

As discussed above, per a settlement agreement, Westside and the treasurer agreed to the filing of a joint motion for a peremptory writ. Relevant here, the settlement agreement also provides that "[if] that Stipulated Motion is denied for any reason, [Westside] will dismiss the Petition for Mandamus against [the treasurer] with prejudice."

After the district court vacated the initial writ, it noted that the action remained pending as though the writ had never been filed. Westside renewed its motion for the writ, but the court denied this motion, citing the settlement agreement. The treasurer argues that the court's vacation of the first writ was akin to a denial and, therefore, the settlement agreement, which required the denial of Westside's motion along with the dismissal of the action as a whole, was properly enforced. Westside counters that a decision to vacate is not the same as

- 677 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

a denial and, accordingly, the dismissal provision of the settlement agreement should not have been enforced. We agree with Westside.

The terms "vacate" and "denial" have distinct meanings. This court has stated that "[w]hen a judgment is vacated and set aside[,] it is nullified so that the resulting situation is precisely the same as if the judgment had never existed."[22] A "denial," on the other hand, is defined in Black's Law Dictionary as a "refusal or rejection; esp., a court's refusal to grant a request presented in a motion or petition."[23] In other words, a decision to vacate resets the playing field, while a denial addresses the substance of a motion. In this case, it can hardly be said that the district court's vacation of the initial writ—which, by definition, permitted additional filings on the matter—had the same effect as an affirmative denial, which would have foreclosed the possibility of Westside receiving that relief.

Because the district court did not deny the writ in the first instance, the dismissal provision of the settlement agreement was not applicable. The district court erred in denying the renewed motion on those grounds.

### (b) Renewed Motion Not Foreclosed by Substance of Writ

The substantive content of the writ does not provide grounds for the denial of the renewed motion, either. As established by our analysis above, Westside is entitled to the PILOT funds and there is a duty for the treasurer to properly distribute those funds. Further, unlike the first writ, Westside's second proposed writ specified only that the erroneous distributions must be corrected but did not detail the manner for doing so.

---

[22] *Miller v. Schlereth*, 151 Neb. 33, 34, 36 N.W.2d 497, 500 (1949) (syllabus of the court).

[23] Black's Law Dictionary 547 (12th ed. 2024).

- 678 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

As such, the substance of the second writ avoids the errors which plagued the first.

### (c) No Other Adequate Remedies Exist

To grant a writ of mandamus, however, it must also be that Westside has no other adequate remedies available to it. That is the case here.

OPS argues that Westside has other adequate remedies available to it, "including pursuing OPS directly and other potential remedies against Douglas County and the Treasurer."[24]

Westside counters, first, that it has no other adequate available remedies, and second, that OPS should be judicially estopped from making the above argument because in a nearly identical case, OPS argued that mandamus was, in fact, the only adequate remedy in such a scenario. Again, we agree with Westside.

The record before us contains various filings and an order from case No. CI 21-2688, a case filed by OPS in Sarpy County, Nebraska, against the Sarpy County treasurer, based on the underpayment of PILOT funds to OPS.[25] In that case, OPS argued that it should receive a writ of mandamus because no other adequate remedies were available to resolve such an underpayment of PILOT funds. OPS succeeded in this argument and received an alternative writ of mandamus. In the present case, however, OPS argues that Westside should be denied such a writ because there are other avenues of relief.

Our case law is clear that the doctrine of judicial estoppel was created for such a situation as this; the doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in

---

[24] Brief for intervenor-appellee at 12.

[25] See *State ex rel. Douglas Cty. Sch. Dist. 0001 v. Jones*, No. CI-21-2688 (Sarpy Cty. Dist. Ct. Aug. 17, 2022).

- 679 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

a prior proceeding.[26] OPS received the same relief Westside now seeks by making the same arguments Westside now makes. To the extent that OPS' arguments in this case are both contrary to its previous arguments on the topic and contrary to Westside's arguments in this case, it is estopped from making such arguments.

Our case law further eliminates any question of whether a writ of mandamus is the appropriate remedy in this case. In *White*, we explicitly stated that "mandamus is the proper remedy is no longer an open question in this state. The writ has been allowed[,] in numerous cases[,] to compel a public officer to pay over public funds in his hands to the party entitled thereto."[27]

This reality was again confirmed in *School District v. Burress*.[28] In that case, the factual situation was, in all important regards, the same as that in *White* and *Kas*. However, in *Burress*, the school brought an action for damages against the responsible county commissioners, in their personal capacities, for the remainder of the funds owed. We concluded that such an action could not be maintained. We explained that this conclusion was based, in part, on the fact that a writ of mandamus, and not an action for damages, was the appropriate manner by which to seek a remedy for the underpayment of funds to the school district. We again affirm the conclusions from these cases.

We address one final matter on this front. Westside filed a motion requesting that this court take judicial notice of two ongoing lawsuits Westside filed against OPS in an attempt to recover the remaining PILOT funds directly from OPS. Westside argues that these lawsuits would support its claim that no other adequate remedies are available. We deferred

---

[26] *Clemens v. Emme*, 316 Neb. 777, 7 N.W.3d 166 (2024).

[27] *White, supra* note 17, 29 Neb. at 291, 45 N.W. at 632 (emphasis omitted).

[28] *School District v. Burress*, 2 Neb. (Unoff.) 554, 89 N.W. 609 (1902).

- 680 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. DOUGLAS CTY. SCH. DIST. NO. 66 v. EWING
Cite as 319 Neb. 663

our decision on that motion until plenary submission of the appeal. In light of our above analysis, we now deny this motion, since we can resolve this case without taking judicial notice of such cases.

Thus, the district court erred in denying the renewed motion and dismissing the action with prejudice because neither the settlement agreement nor the substance of the proposed writ precluded the court from granting such a motion, and our case law has established that there are no other adequate remedies which would preclude the granting of such a writ of mandamus. We affirm in part, and in part reverse the order of the district court and remand the cause with direction for the district court to issue an alternative writ of mandamus with an order for the treasurer to show cause why a peremptory writ should not be issued requiring the treasurer to pay Westside the amounts it was entitled to receive by law.

## VI. CONCLUSION

Westside has met its burden of proving that it is entitled to the PILOT funds it did not receive; that both article VIII, § 11, of the Nebraska Constitution and § 70-651.04 create a ministerial duty for the treasurer to ensure PILOT funds are, at all times, distributed in the manner provided by those provisions; and that the correct remedy for the failure to properly perform such a duty is a writ of mandamus. Although the district court properly vacated the first writ, the court erred in denying Westside's renewed motion for the modified writ of mandamus. As such, the case was improperly dismissed with prejudice. Westside is entitled to an alternative writ of mandamus.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTION.

PAPIK, J., not participating.