Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/23/2026 08:06 AM CDT

CYNTHIA BURBANK, ALSO KNOWN AS CINDY BURBANK,
APPELLANT, V. ROBERT B. EVNEN, IN HIS OFFICIAL CAPACITY
AS NEBRASKA SECRETARY OF STATE, APPELLEE, AND THE
NEBRASKA REPUBLICAN PARTY, INTERVENOR.

___ N.W.3d ___

Filed March 23, 2026.    No. S-26-208.

1. **Mandamus.** Whether to grant a writ of mandamus is within a court's discretion.
2. **Actions: Mandamus.** An action for a writ of mandamus is a law action.
3. **Judgments: Statutes: Appeal and Error.** In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and an appellate court will not disturb those findings unless they are clearly erroneous. However, questions of law and statutory interpretation require an appellate court to reach a conclusion independent of the decision made by the court below.
4. **Moot Question: Jurisdiction: Appeal and Error.** Mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, and an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions.
5. **Judgments: Jurisdiction: Appeal and Error.** When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by lower courts.
6. **Moot Question.** Mootness refers to events occurring after the filing of a suit that eradicate the requisite personal interest in the dispute's resolution that existed at the beginning of the litigation.
7. **Actions: Moot Question.** An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action.
8. **Moot Question: Words and Phrases.** A moot case is one that seeks to determine a question that no longer rests upon existing facts or rights— i.e., a case in which the issues presented are no longer alive.

9. **Moot Question.** The central question in a mootness analysis is whether changes in circumstances have forestalled any occasion for meaningful relief.

10. \_\_\_\_. A moot case is subject to dismissal.

11. **Mandamus: Words and Phrases.** Mandamus is a law action and represents an extraordinary remedy, not a writ of right.

12. **Mandamus: Proof.** Mandamus relief is available if the movant can show (1) a clear right to the relief sought, (2) a corresponding clear duty to perform the act requested, and (3) no other plain and adequate remedy is available in the ordinary course of law.

13. \_\_\_\_: \_\_\_\_. In a mandamus action, the party seeking mandamus has the burden of proof and must show clearly and conclusively that such party is entitled to the particular thing the relator asks and that the respondent is legally obligated to act.

14. **Mandamus: Public Officers and Employees.** Mandamus is available to enforce the performance of ministerial duties of a public official but is not available if the duties are quasi-judicial or discretionary.

15. \_\_\_\_: \_\_\_\_. A duty imposed by law which may be enforced by writ of mandamus must be one which the law specifically enjoins as a duty resulting from an office, trust, or station.

16. **Mandamus.** The general rule is that an act or duty is ministerial only if there is an absolute duty to perform in a specified manner upon the existence of certain facts.

17. \_\_\_\_. A duty or act is ministerial when there is no room for the exercise of discretion, official or otherwise, the performance being required by direct and positive command of the law.

18. **Public Officers and Employees.** A ministerial duty is not dependent upon a public officer's judgment or discretion--it is performed under the conditions specified in obedience to the mandate of legal authority, without regard for the exercise of the officer's judgment upon the propriety of the act being done.

19. **Mandamus.** To warrant the issuance of a peremptory writ of mandamus to compel the performance of a legal duty to act, (1) the duty must be imposed by law, (2) the duty must still exist at the time the writ is applied for, and (3) the duty must be clear.

20. **Statutes: Appeal and Error.** The text of a statute is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

21. **Voting: Time.** Regardless of who is objecting to a candidate filing form, the plain language of Neb. Rev. Stat. § 32-624 (Supp. 2025) requires

that unless the written objection is made within 7 days after the filing deadline, the candidate filing form shall be deemed valid.

22. **Statutes: Legislature: Intent.** In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found.

23. **Voting: Words and Phrases.** When a candidate filing form is deemed valid by operation of law, the candidate is one who "is entitled to be voted for" within the meaning of Neb. Rev. Stat. § 32-801 (Reissue 2016).

24. **Mandamus: Public Officers and Employees.** Absent an objection to a candidate filing, the Secretary of State's statutory certification duty is a purely ministerial one, enjoined by law, involving no discretion.

25. ____: ____. When a candidate filing form has been deemed to be valid, it gives rise to a ministerial duty requiring the Secretary of State to include the candidate when certifying the ballot.

Appeal from the District Court for Lancaster County: John A. Colborn, Judge. Reversed and remanded with directions.

Vincent M. Powers and Kathleen M. Neary, of Powers Law, and David Fox, Jacob D. Shelly, Derek A. Zeigler, and Max Accardi, of Elias Law Group, L.L.P., pro hac vice, for appellant.

Michael T. Hilgers, Attorney General, Cody S. Barnett, and Zachary B. Pohlman, for appellee.

Brenna M. Grasz, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., and Erin Morrow Hawley and John S. Ehrett, of Lex Politica, P.L.L.C., pro hac vice, for intervenor.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, Bergevin, and Vaughn, JJ.

Per Curiam.

## I. INTRODUCTION

Cynthia Burbank filed with the Nebraska Secretary of State (Secretary) to be a Democratic Party candidate for U.S. Senate in the 2026 primary election. When the Secretary refused to

certify Burbank for inclusion on the primary election ballot, Burbank filed a verified complaint seeking mandamus and other relief. The district court denied all requested relief, and Burbank appeals.

For reasons we will explain, we reverse the judgment of the district court and remand the cause with directions to enter a peremptory writ of mandamus directing the Secretary to certify Burbank as a Democratic Party candidate for U.S. Senate for the primary election to be held on May 12, 2026.

## II. BACKGROUND

On March 17, 2026, Burbank filed a verified complaint against the Secretary in the district court for Lancaster County. The complaint was styled as multiple causes of action, including one titled "Petition for Writ of Mandamus under Neb. Rev. Stat. § 25-2156." Because the mandamus action is dispositive of the issues raised on appeal, we do not discuss the other causes of action.

### 1. Mandamus Petition

Burbank's verified petition alleged that the Secretary has a mandatory, nondiscretionary duty to place her name on the 2026 primary election ballot as a Democratic Party candidate for U.S. Senate.[1] In support of that contention, Burbank alleged that (1) she satisfied the constitutional requirements to be a U.S. Senator[2]; (2) prior to the applicable filing deadline for nonincumbent candidates on March 2, 2026, she completed and submitted the required candidate filing form with the Secretary and paid the required filing fee to be a placed on the 2026 primary election ballot as a Democratic Party candidate

---

[1] See Neb. Rev. Stat. § 32-801 (Reissue 2016) (setting out ballot certification requirements and procedure).

[2] See U.S. Const. art. I, § 3, cl. 3 ("[n]o Person shall be a Senator who shall not have attained to the Age of thirty Years, and been nine Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State for which he shall be chosen").

for U.S. Senate[3]; and (3) no written objection to her candidacy was filed prior to the statutory deadline of March 9, 2026.[4]

Regarding the candidate filing form, Burbank alleged that she

> accurately completed every field in her filing form, including the name by which she is generally known in the community, her contact information, and the required oath: "I hereby swear that I will abide by the laws of the State of Nebraska regarding the results of the primary and general elections, that I am a registered voter and qualified to be elected, and that I will serve if elected."

Burbank alleged that on March 16, 2026, the Secretary sua sponte determined that Burbank "'has no intention of holding the office that she purportedly seeks'" and announced that he would not certify her as a candidate on the primary election ballot. Attached as an exhibit to Burbank's verified petition was a letter from the Secretary explaining his reasoning.

In that letter, the Secretary acknowledged that Burbank had filed to run as a Democratic Party candidate in the 2026 primary election for U.S. Senate and that she had filed her candidate filing form in person at the Secretary of State Elections Division office. The Secretary also acknowledged that in that filing form, Burbank swore to the oath required by § 32-607(1)(a), which states, among other things, "I will serve if elected."

The Secretary's letter also discussed a written objection to Burbank's candidate filing form received from the Nebraska Republican Party. The objection asked the Secretary to reject Burbank's filing form and withhold her name from the 2026 primary ballot for U.S. Senate, asserting that statements appearing on Burbank's public website, and public statements about Burbank made by the chair of the Nebraska Democratic

---

[3] See Neb. Rev. Stat. §§ 32-606 to 32-608 (Cum. Supp. 2024 & Supp. 2025).

[4] See Neb. Rev. Stat. § 32-624(1) (Supp. 2025).

Party, showed that Burbank is a "'plant'" candidate who "has no intention of serving if elected, in violation of her oath and the statute requiring it." The Secretary expressly denied the Nebraska Republican Party's objection as untimely, finding that objections must be made "within seven days after the filing deadline"[5] and the Nebraska Republican Party's objection was filed after that 7-day period had passed.

But the Secretary's letter went on to conclude that he had the authority, sua sponte, to refuse to put a candidate's name on the ballot even in the absence of a timely filed objection under § 32-624. The Secretary stated that he "will not certify . . . Burbank for the primary ballot," reasoning, among other things, that statements on Burbank's website demonstrated that "[c]ontrary to her oath, she has no intention to serve."

Burbank's verified petition alleged that nothing in Nebraska law authorized the Secretary to refuse to certify her for the 2026 primary ballot when no timely objection under § 32-624 had been made, and she requested issuance of a peremptory writ of mandamus compelling the Secretary to list her as a Democratic candidate for U.S. Senate when certifying the ballot for the May 12, 2026, primary election. She also asked that the matter be advanced on the district court's docket and "decided no later than Wednesday, March 18, 2026."

## 2. Expedited Hearing

On March 18, 2026, Burbank and the Secretary appeared by counsel for an expedited hearing on Burbank's verified complaint, including the petition for writ of mandamus. Also appearing was counsel for the Nebraska Republican Party, who sought leave to intervene and align with the Secretary in the action. The court allowed intervention over Burbank's objection.

All parties adduced evidence in support of their respective positions. Burbank offered her verified complaint with attached exhibits, which the court received without objection.

---

[5] *Id.*

The Secretary offered his own affidavit, attached to which were copies of screenshots from Burbank's campaign website, an email from the Nebraska Democratic Party chair, and other information that the Secretary said he considered and relied upon when preparing the letter announcing that he would not certify Burbank for the primary election ballot. The intervenor offered its verified petition to intervene and answer, with attached exhibits, which the court also received. After considering the parties' arguments, the district court took the matter under advisement.

### 3. Order of Dismissal

On March 19, 2026, the district court entered a judgment, styled as an order, denying all relief and dismissing Burbank's complaint in its entirety. As relevant to the verified petition for writ of mandamus, the district court's order recited the general requirements for entitlement to mandamus relief and concluded that "Burbank has not carried her burden of proof for a peremptory writ of mandamus." The order did not include specific factual findings, and none were requested by the parties.

Burbank filed her notice of appeal later the same day, and we moved the appeal to our docket on our motion. The following day, we ordered expedited briefing and submitted the appeal without oral argument.

## III. ASSIGNMENTS OF ERROR

Burbank assigns, consolidated and restated, that the district court erred in failing to issue a peremptory writ of mandamus compelling the Secretary to certify her as a Democratic Party candidate for U.S. Senate in the 2026 primary election.

## IV. STANDARD OF REVIEW

[1-3] Whether to grant a writ of mandamus is within a court's discretion.[6] An action for a writ of mandamus is a law

---

[6] *State ex rel. Douglas Cty. Sch. Dist. No. 66 v. Ewing*, 319 Neb. 663, 24 N.W.3d 861 (2025).

action.[7] In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and an appellate court will not disturb those findings unless they are clearly erroneous.[8] However, questions of law and statutory interpretation require an appellate court to reach a conclusion independent of the decision made by the court below.[9]

[4,5] Mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, and an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions.[10] When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by lower courts.[11]

## V. ANALYSIS

### 1. Appeal Is Not Moot

Before reaching the merits of Burbank's appeal, we address a threshold issue: Whether her appeal is moot. The Secretary argues that it is, and he filed a motion to dismiss the appeal on the ground of mootness, which we held in abeyance pending plenary submission.

[6-10] Mootness refers to events occurring after the filing of a suit that eradicate the requisite personal interest in the dispute's resolution that existed at the beginning of the litigation.[12] An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack

---

[7] *State ex rel. Seeman v. Lower Republican NRD*, 319 Neb. 681, 24 N.W.3d 874 (2025).

[8] *Id.*

[9] *Id.*

[10] *Saint Joseph Tower Assisted Living v. Royce*, 320 Neb. 830, 30 N.W.3d 838 (2026).

[11] *Id*.

[12] *City of Hastings v. Sheets*, 317 Neb. 88, 8 N.W.3d 771 (2024).

a legally cognizable interest in the outcome of the action.[13] A moot case is one that seeks to determine a question that no longer rests upon existing facts or rights—i.e., a case in which the issues presented are no longer alive.[14] The central question in a mootness analysis is whether changes in circumstances have forestalled any occasion for meaningful relief.[15] A moot case is subject to dismissal.[16]

The Secretary argues that this case is moot because he has already certified the ballot for the 2026 primary election. To support this argument, the Secretary submitted an affidavit, signed by his assistant deputy for elections, stating that the ballot for the 2026 primary election was certified on Thursday, March 19, 2026. The Secretary argues that "[p]ursuant to his earlier decision excluding Burbank from the ballot and the district court's dismissal of Burbank's challenge to that decision, [the Secretary] certified statewide primary ballots that do not include [Burbank's] name as a candidate in the Democratic primary for United States Senate."[17] The Secretary contends that his certification of the ballot resulted in a change of circumstances that effectively prevents this court from affording Burbank the relief she seeks.

We disagree that the Secretary's certification of the primary ballot has forestalled any occasion for meaningful relief. The relief Burbank seeks in this appeal is a writ of mandamus compelling the Secretary to list her as a Democratic candidate for U.S. Senate when certifying the 2026 primary election ballot. Even though the Secretary has already certified the 2026 primary election ballot without listing Burbank as a candidate, we know of no legal or practical barrier that would prevent the Secretary from recertifying the primary

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] Brief for appellee in support of motion to dismiss at 3.

ballot to list Burbank as a candidate if such relief were ordered by this court. Nor has the Secretary offered any legal authority suggesting that once a primary election ballot is certified, he would lack the authority to recertify as required by a court order.

Furthermore, at this stage, no statutory deadline has passed that would arguably preclude the Secretary from recertifying the primary election ballot. The Secretary is required by § 32-801 to certify the official ballot "[a]t least fifty days before any statewide primary or general election." Because the primary election is scheduled to occur on Tuesday, May 12, 2026, the statutory deadline for the Secretary to certify the ballot is 5 p.m. on Monday, March 23.[18] Although we see nothing in the statutory scheme that prevented the Secretary from certifying the ballot prior to the statutorily mandated deadline, doing so does not prevent this court from ordering recertification in the form of mandamus relief if that is what the law requires.

For the sake of completeness, we acknowledge that the Secretary refers to the 2026 official election calendar for the State of Nebraska, and he observes that it shows a deadline of March 20, 2026, to certify the primary election ballot. We do not understand the Secretary to argue that March 20 is, in fact, the statutory deadline to certify the primary ballot. But to the extent the Secretary suggests, based on the official election calendar, that the statutory deadline for certification has already passed, we cannot agree. Under Nebraska statute, the official election calendar "shall be merely a guideline and shall in no way legally bind the Secretary of State or the Attorney General."[19] As such, even if a different date

---

[18] See Neb. Rev. Stat. § 32-206(3) (Cum. Supp. 2024) ("any filing or other act required to be performed by a specified day shall be performed by 5 p.m. of such day, except that if such day falls upon a Saturday, Sunday, or legal holiday, performance shall be required on the next business day").

[19] § 32-206(1).

for the certification deadline appears on the official election calendar, the math shows that the statutory deadline for the Secretary to certify the ballot is 5 p.m. on Monday, March 23, 2026.

Because the Secretary's certification of the ballot has not resulted in a change of circumstances that effectively prevents this court from affording any meaningful relief, this appeal is not moot. We overrule the Secretary's motion to dismiss the appeal as moot.

## 2. MANDAMUS RELIEF

Burbank's primary argument on appeal is that the trial court erred in denying her request for a peremptory writ of mandamus directing the Secretary to include her name as a Democratic Party candidate for the U.S. Senate when certifying the 2026 primary election ballot.

[11-13] Mandamus is a law action and represents an extraordinary remedy, not a writ of right.[20] Mandamus relief is available if the movant can show (1) a clear right to the relief sought, (2) a corresponding clear duty to perform the act requested, and (3) no other plain and adequate remedy is available in the ordinary course of law.[21] In a mandamus action, the party seeking mandamus has the burden of proof and must show clearly and conclusively that such party is entitled to the particular thing the relator asks and that the respondent is legally obligated to act.[22]

[14-18] Mandamus is available to enforce the performance of ministerial duties of a public official but is not available if the duties are quasi-judicial or discretionary.[23] A duty imposed by law which may be enforced by writ of mandamus must be one which the law specifically enjoins as a duty resulting from

---

[20] *State ex rel. Douglas Cty. Sch. Dist. No. 66 v. Ewing, supra* note 6.

[21] *Id.*

[22] *Id.*

[23] *Id.*

an office, trust, or station.[24] The general rule is that an act or duty is ministerial only if there is an absolute duty to perform in a specified manner upon the existence of certain facts.[25] A duty or act is ministerial when there is no room for the exercise of discretion, official or otherwise, the performance being required by direct and positive command of the law.[26] A ministerial duty is not dependent upon a public officer's judgment or discretion—it is performed under the conditions specified in obedience to the mandate of legal authority, without regard for the exercise of the officer's judgment upon the propriety of the act being done.[27]

[19] To warrant the issuance of a peremptory writ of mandamus to compel the performance of a legal duty to act, (1) the duty must be imposed by law, (2) the duty must still exist at the time the writ is applied for, and (3) the duty must be clear.[28]

To analyze whether Burbank is entitled to mandamus relief on this record, we first review the statutory ballot certification process regarding candidates for office and the Secretary's statutory duties in that regard.

(a) Ballot Certification Process
and Secretary's Duties

Under Nebraska's Election Act,[29] a "[c]andidate" is defined as a "registered voter for whom votes may be cast at any election and who, either tacitly or expressly, consents to be

---

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *State ex rel. AMISUB v. Buckley*, 260 Neb. 596, 618 N.W.2d 684 (2000).

[29] Neb. Rev. Stat. §§ 32-101 to 32-1552 (Reissue 2016, Cum. Supp. 2024 & Supp. 2025).

considered."[30] Generally speaking, the process for becoming a candidate is set out in §§ 32-606 through 32-608.

Section 32-606 states, in relevant part: "Any candidate may place his or her name on the primary election ballot by filing a candidate filing form prescribed by the [Secretary] as provided in section 32-607."[31] Section 32-607, in turn, provides, in relevant part:

All candidate filing forms shall contain the following statement: *I hereby swear that I will abide by the laws of the State of Nebraska regarding the results of the primary and general elections, that I am a registered voter and qualified to be elected, and that I will serve if elected*. Candidate filing forms shall also contain the following information regarding the candidate: Name, as provided under subdivision (b) of this subsection; residence address; mailing address if different from the residence address; telephone number; office sought; party affiliation if the office sought is a partisan office . . . .

(Emphasis supplied.) Candidates filing for "national, state, or congressional office" are to file their forms "in the office of the [Secretary]."[32] And § 32-608 requires a filing fee to be paid on behalf of each candidate prior to filing for office, with certain exceptions not relevant here.

The validity of a candidate filing form is addressed in § 32-624(1), which states, in relevant part: "A candidate filing form filed for the primary or general election pursuant to section 32-606 *shall be deemed to be valid unless objections are made in writing within seven days after the filing deadline*." (Emphasis supplied.) The effect of the italicized language is

---

[30] § 32-104.

[31] § 32-606(1).

[32] § 32-607(2).

to create a conclusive presumption of validity when no written objections are made to a candidate filing form within the statutory period.[33] But when a timely objection is made, all affected candidates must be given notice and "the validity of such objection"[34] shall be determined by "[t]he filing officer with whom the candidate filing form was filed."[35] Such officer's "decision shall be final unless an order is made in the matter by a judge of the county court, district court, Court of Appeals, or Supreme Court on or before the fifty-fifth day preceding the election."[36]

Finally, § 32-801 sets out the ballot certification timeline and process. As relevant here, that statute provides that "[a]t least fifty days before any statewide primary or general election, the [Secretary] shall transmit in ballot form to each election commissioner or county clerk a certification of the candidates . . . that appear on the state ballot."[37] The form of the required certification for primary elections is also set out in § 32-801, which states that such certification

> shall name the office to be filled, the length of the term, the number of candidates to be voted for, the name of each candidate for whom candidate filing forms . . . have been filed in the office of the [Secretary] and who is entitled to be voted for at such primary election,

---

[33] See *Nebraska Republican Party v. Shively*, 311 Neb. 160, 164, 971 N.W.2d 128, 134 (2022) ("[u]nless objections are made, a candidate filing form which appears to conform with Neb. Rev. Stat. §§ 32-606 (Supp. 2021) and 32-607 shall be deemed to be valid"). See, also, *Salem Grain Co. v. City of Falls City*, 302 Neb. 548, 924 N.W.2d 678 (2019) (discussing effect of conclusive presumptions of validity enacted by Legislature).

[34] § 32-624(2).

[35] *Id*.

[36] *Id*.

[37] § 32-801.

and the party affiliation or nonpartisan status of each candidate.

With this statutory certification procedure in mind, we turn now to Burbank's argument that the district court erred by denying her request for a peremptory writ of mandamus directing the Secretary to include her name as a Democratic Party candidate for U.S. Senate when certifying the 2026 primary election ballot. Before analyzing this argument, we review the Secretary's stated reasons for refusing to list Burbank as a candidate when certifying the 2026 primary ballot.

The Secretary does not contend that Burbank's candidate filing form was incomplete or untimely, nor is there any evidence in the record to support such a contention. Instead, the Secretary's letter shows that the reason he refused to certify Burbank as a candidate on the primary ballot was his conclusion, based on public statements by Burbank and others regarding her intentions in running for U.S. Senate, that the oath Burbank swore in her candidate filing form to "serve if elected" lacked veracity. As such, the substance of the Secretary's letter necessarily makes a written objection to the validity of Burbank's candidate filing form. Assuming without deciding that the Secretary can, sua sponte, object to a candidate filing form, the question becomes whether such objections are subject to the strict 7-day deadline set out in § 32-624. We conclude they are.

### (b) All Objections Are Subject to Time Limit in § 32-624

Section 32-624(1) unambiguously provides that a candidate filing form "shall be deemed to be valid unless objections are made in writing within seven days after the filing deadline." The record shows the Secretary's written objection to Burbank's filing form was made well beyond that timeframe, but we understand him to argue this is inconsequential because

the 7-day period in § 32-624 only applies to "third parties"[38] and "does not cabin the Secretary's authority."[39] We disagree.

[20,21] There is no language in § 32-624 limiting the 7-day time limit to "third parties," and we decline to read such language into the statute. The text of a statute is to be given its plain and ordinary meaning,[40] and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[41] We hold that regardless of who is objecting to a candidate filing form, the plain language of § 32-624 requires that unless the written objection is made within 7 days after the filing deadline, the candidate filing form shall be deemed valid.

[22] Furthermore, construing the term "objections" in § 32-624(1) to plainly encompass objections raised by anyone is consistent with the statutory scheme. In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found.[42] In *Nebraska Republican Party v. Gale*,[43] we recognized that when the Legislature enacted §§ 32-624 and 32-801, it "established by statute strict statutory deadlines which must be met in order to guarantee that the state's election process is safeguarded against uncertainty and disruption."[44] We see no principled basis to exclude the

---

[38] See brief for appellee at 9 (suggesting only "a third party" could object under § 32-624) and 20 (contending § 32-624 sets out a procedure "whereby third parties can file objections").

[39] Brief for appellee at 20.

[40] E.g., *Flinn v. Strode*, 320 Neb. 813, 30 N.W.3d 661 (2026).

[41] E.g., *Jones v. Colgrove*, 319 Neb. 461, 24 N.W.3d 1 (2025).

[42] *Flinn v. Strode, supra* note 40.

[43] *Nebraska Republican Party v. Gale*, 283 Neb. 596, 812 N.W.2d 273 (2012).

[44] *Id.* at 599, 812 N.W.2d at 276.

Secretary from the strict statutory deadline for objecting to candidate filing forms under § 32-624.

Having concluded that the Secretary's written objection to Burbank's candidate filing form was subject to the 7-day time period in § 32-624 and that such objection was made after that statutory time period expired, we next consider the legal effect of a record that shows no timely objections to Burbank's candidate filing form.

### (c) Burbank's Candidate Filing Form Is
### Deemed Valid by Operation of Law

Once the 7-day deadline in § 32-624 passed without a written objection being made to Burbank's candidate filing form, that form was conclusively "deemed to be valid"[45] by operation of law. Because both the Secretary's objection and the Nebraska Republican Party's objection were untimely under § 32-624, there is no reason to consider or address the merits of those objections to Burbank's candidate filing form, and we express no opinion in that regard. Instead, we turn our attention to the Secretary's legal duty under the certification statute when a candidate filing form is conclusively deemed to be valid.

### (d) Secretary Has Ministerial Duty to
### Include Burbank When Certifying
### 2026 Primary Ballot

[23] As stated, under § 32-801, the Secretary is required to certify the candidates and offices that appear on the state ballot at least 50 days before any statewide primary election. Such certification must include "the name of each candidate for whom candidate filing forms . . . have been filed in the office of the [Secretary] and who is entitled to be voted for at such primary election."[46] When a candidate filing form is deemed

---

[45] § 32-624(1).

[46] § 32-801.

valid by operation of law, the candidate is one who "is entitled to be voted for" within the meaning of § 32-801.

[24,25] It has long been the rule in Nebraska that absent an objection to a candidate filing, the Secretary's statutory certification duty is "purely a ministerial one[,] enjoined by law, involving no discretion."[47] As such, when a candidate filing form has been deemed to be valid, it gives rise to a ministerial duty requiring the Secretary to include the candidate when certifying the ballot.[48] Because Burbank's candidate filing form is conclusively deemed to be valid by operation of law, the Secretary has an absolute duty under § 32-801, when certifying the primary election ballot, to include Burbank's name as a Democratic Party candidate for U.S. Senate.

### (e) Burbank Entitled to Peremptory Writ

On this record, Burbank met her burden to clearly and conclusively show that her candidate filing form is valid and that she is entitled to be included on the 2026 primary election ballot as a Democratic Party candidate for U.S. Senate. She has also shown that the Secretary has a corresponding clear legal duty, imposed by law and existing at the time the writ was applied for, to include her name when certifying the 2026 primary election ballot. To the extent the district court concluded otherwise, it erred.

### VI. CONCLUSION

On this record, we conclude the Secretary had a ministerial, nondiscretionary duty to include Burbank's name as a Democratic Party candidate for U.S. Senate when certifying the 2026 primary election ballot. The district court thus erred in denying Burbank's request for a peremptory writ of mandamus.

---

[47] *State v. Piper*, 50 Neb. 25, 33, 69 N.W. 378, 381 (1896).

[48] § 32-801. See, also, § 32-606 ("[a]ny candidate may place his or her name on the primary election ballot by filing a candidate filing form prescribed by the [Secretary]").

We reverse the judgment of the district court and remand the cause with directions to immediately upon receipt of the mandate, and no later than 10 a.m. on Monday, March 23, 2026, issue a peremptory writ of mandamus directing the Secretary to certify Burbank as a Democratic Party candidate for U.S. Senate for the primary election to be held on May 12, 2026. Mandate to issue forthwith, for immediate delivery.

REVERSED AND REMANDED WITH DIRECTIONS.